UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY WEST and JENIE LEE MARIANI, *on behalf of themselves and all other similarly situated*,

      Plaintiffs,

      - against -

METROPOLITAN TRANSPORTATION AUTHORITY, NEW YORK CITY TRANSIT AUTHORITY, and LONG ISLAND RAIL ROAD COMPANY d/b/a MTA LONG ISLAND RAIL ROAD COMPANY,

      Defendants.

18-CV-1743 (WFK) (RML)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

HOGUET NEWMAN
REGAL & KENNEY LLP
    Ira J. Lipton
    Helene H. Hechtkopf
    Steven Silverberg
    Julian Brod
    Miriam Manber
    10 East 40th Street, 35th Floor
    New York, NY 10016
    Tel.:  212-689-8808

*Attorneys for Defendants Metropolitan Transportation Authority, New York City Transit Authority, and Long Island Rail Road Company*

Dated: New York, NY
      September 17, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ....................................................................................................... 1

THE CLAIMS ALLEGED IN THE FIRST AMENDED COMPLAINT ...................................... 3

    A.  The Parties ...................................................................................................... 3

    B.  Platform Edges In the Subways and Long Island Rail Road Platforms ........................... 3

    C.  Class Action Allegations ...................................................................................... 4

    D.  Plaintiffs' Causes of Action .................................................................................. 4

ARGUMENT ............................................................................................................. 5

    I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER FEDERAL
        LAW ................................................................................................................ 5

    II.  THE STATE AND LOCAL CLAIMS SHOULD BE DISMISSED FOR LACK OF
        SUBJECT MATTER JURISDICTION ..................................................................... 7

        A.  The Court Should Decline to Exercise Supplemental Jurisdiction .............................. 7

        B.  There is No Diversity Jurisdiction Over the State Law Claims Under the Class Action
            Fairness Act .................................................................................................. 8
            1.  The "Home State Exception" Precludes Jurisdiction ....................................... 8
            2.  The "Local Controversy Exception" Precludes Jurisdiction ............................. 9
            3.  The "Discretionary Exception" Also Applies, and the Court Should Decline
               Jurisdiction ............................................................................................. 10

    III.    THE STATE AND LOCAL LAW CLAIMS FAIL AS A MATTER OF LAW ......... 12

        A.  Absent Class Members' State And Local Law Claims Must Be Dismissed For Failure
            To Satisfy Conditions Precedent To Suit ............................................................. 12

        B.   Plaintiff's Negligence Claim Is Barred By The Doctrine Of Governmental
            Immunity ..................................................................................................... 13

        C.  The New York State Human Rights Law Claim Must be Dismissed .......................... 16

        D.  The New York City Human Rights Law Claims Must Be Dismissed .......................... 17

i

1.  The State Legislature Has Immunized Defendants From NYCHRL Claims ............................................................................................17

2.  The State Human Rights Law Pre-Empts Application of City Law With Respect to the Accessibility of Public Transportation Facilities ....................18

IV.   CLASS CERTIFICATION SHOULD BE DENIED ...................................................20

A.  Plaintiffs' Proposed Subclasses Are Also Unworkable .............................................21

B.  Plaintiffs Cannot Meet The Rule 23(a) Requirements for Class Certification ...........22

C.  Plaintiffs Cannot Meet the Rule 23(b) Requirements for Class Certification ...........23

CONCLUSION ............................................................................................................25

## **TABLE OF AUTHORITIES**

### **Cases**

*Abrams v. N.Y.C. Transit Auth.*,
    39 N.Y.2d 990 (1976) ................................................................. 16

*Alexander v. Choate*,
    469 U.S. 287 (1985) ..................................................................... 5

*Andersen v. Long Island R.R.*,
    88 A.D.2d 328 (2d Dep't 1982), *aff'd*, 59 N.Y.2d 657 (1983) ............................................. 12

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015) ......................................................... 22

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
    980 F. Supp. 2d 588 (S.D.N.Y. 2013) ...................................... 5

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010).........................................................23

*CBS Outdoor, Inc. v. City of New York*,
    50 Misc. 3d 283 (Sup. Ct. N.Y. Cty. 2015) ............................ 18

*Chime v. Peak Sec. Plus, Inc.*,
    137 F. Supp. 3d 183 (E.D.N.Y. 2015) ...................................... 23

*Commisso v. PricewaterhouseCoopers LLP*,
    11 Civ. 5713, 2012 WL 3070217 (S.D.N.Y. July 27, 2012) ............................................. 8, 10

*Consol. Edison Co. of N.Y. v. Town of Red Hook*,
    60 N.Y.2d 99 (1983).............................................................18, 19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ....................................................... 21

*DJL Rest. Corp. v. City of New York*,
    96 N.Y.2d 91 (2001) ................................................................... 20

*Doe v. Pfrommer*,
    148 F.3d 73 (2d Cir. 1998) ........................................................... 5

*E.B. Metal & Rubber Indus. Inc. v. County of Washington*,
    102 A.D.2d 599 (3d Dep't 1984) ............................................... 15

*Forman v. Data Transfer*,
    164 F.R.D. 400 (E.D. Pa. 1995) ............................................... 21

*Hardy v. N.Y.C. Health & Hosps. Corp.*,
    164 F.3d 789 (2d Cir. 1999) ...................................................... 13

*Henrietta D. v. Bloomberg*,
 331 F.3d 261 (2d Cir. 2003) ................................................................ 5

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
 818 F.2d 145 (2d Cir. 1987) ................................................................ 22

*Penny Port LLC v. N.Y.C. Dep't of Health*,
 N.Y.L.J., Sep. 27, 1999 at 30 (Sup. Ct. N.Y. Cty. 1999)........................18

*Johnson v. Nextel Commc'ns Inc.*,
 780 F.3d 128 (2d Cir. 2015) ................................................................ 22

*Kadymir v. N.Y.C. Transit Auth.*,
 55 A.D.3d 549 (2d Dep't 2008) ........................................................... 14

*Lucker v. Bayside Cemetery*,
 262 F.R.D. 185 (E.D.N.Y. 2009) .......................................................... 9

*Mattera v. Clear Channel Commc'ns, Inc.*,
 239 F.R.D. 70 (S.D.N.Y. 2006)........................................................ 8-9

*McGauhey v. Treistman*,
 No. 05 Civ. 7069, 2007 WL 24935 (S.D.N.Y. Jan. 4, 2007) ......................... 12, 25

*Metro. Transp. Auth. v. Village of Tuckahoe*,
 67 Misc. 2d 895 (Sup. Ct. Westchester Cty.), *aff'd*, 38 A.D.2d 570 (2d Dep't 1971) ................ 18

*Miller v. State*,
 62 N.Y.2d 506 (1984)........................................................................14

*Mon v. City of New York*,
 78 N.Y.2d 309 (1991)........................................................................14

*N.Y.C. Health & Hosps. Corp. v. Council of City of N.Y.*,
 303 A.D.2d 69 (1st Dep't 2003) ........................................................ 18, 19, 20

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
 712 F.3d 705 (2d Cir. 2013) ................................................................ 7

*People v. Long Island R.R.*,
 90 Misc. 2d 269 (N.Y. App. Term 2d Dep't 1976), *aff'd on opinion at App. Term*, 41 N.Y.2d 1039 (1977) ........................................................................ 18

*People v. Metro-North Commuter R.R. Co.*,
 132 Misc. 2d 1072 (Crim. Ct. Bronx Cty. 1986) .................................... 18

*Presmarita v. Metro-North Commuter R.R. Co.*,
 No. 17-cv-1118, 2017 WL 6542515 (S.D.N.Y. Dec. 21, 2017) ......................... 5, 7

*Rios v. Marshall*,
   100 F.R.D. 395 (S.D.N.Y. 1983) ................................................................ 24

*Rodriguez v. City of New York*,
   197 F.3d 611 (2d Cir. 1999) ...................................................................... 5

*Rodriguez v. It's Just Lunch Int'l*,
   No. 07-cv-9227, 2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) ............................ 22

*Shaw v. Long Island R.R. Co.*,
   No. 16-cv-6972, 2017 WL 5634122 (E.D.N.Y. Nov. 22, 2017), *reconsideration denied*, 2018
   WL 748674 (E.D.N.Y. Feb. 7, 2018) ...................................................... 12, 13

*Simpson v. Wash. Metro. Area Transit Auth.*,
   688 F. Supp. 765 (D.D.C. 1988), *aff'd*, 1990 WL 104842 (D.C. June 5, 1990) ................ 15

*Tang v. N.Y.C. Transit Auth.*,
   55 A.D.3d 720 (2d Dep't 2008) ................................................................ 18

*Tango v. Tulevech*,
   61 N.Y.2d 34 (1983) .............................................................................. 14

*United States v. Students Challenging Regulatory Agency Procedures*,
   412 U.S. 669 (1973) .............................................................................. 21

*Valdez v. City of New York*,
   18 N.Y.3d 69 (2011) .......................................................................... 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................... 20, 24

*Weiner v. Metro. Transp. Auth.*,
   55 N.Y.2d 175 (1982) ............................................................................ 14

*World Trade Ctr. Bombing Litig. v. Port Auth. of N.Y. & N.J.*,
   17 N.Y.3d 428 (2011) ............................................................................ 14

## **Statutes**

28 U.S.C. § 1332 ..................................................................... 8, 9, 10, 11

28 U.S.C. § 1367 ............................................................................... 7

29 U.S.C. § 701 ................................................................................ 4

42 U.S.C. ch. 126 § 12101 ................................................................. 4, 5

62A N.Y. Jur. 2d Gov't Tort Liab. § 389 ...................................................... 13

N.Y.C. Admin. Code § 8-101 ................................................................... 4

N.Y.C. Admin. Code § 8-107 ................................................................... 17

N.Y. Exec. Law § 292 .......................................................................... 4

N.Y. Exec. Law § 296 ................................................................................ 16, 19

N.Y. Laws of 2007, Ch. 394 § 1 ...............................................................19

N.Y. Pub. Auth. Law § 1201 ..................................................................... 3

N.Y. Pub. Auth. Law §1202 ................................................................. 15, 17

N.Y. Pub. Auth. Law § 1212 .......................................................... 12-13, 13

N.Y. Pub. Auth. Law § 1261 ..................................................................... 17

N.Y. Pub. Auth. Law § 1263 ................................................................... 3, 17

N.Y. Pub. Auth. Law § 1264 ........................................................... 15, 16, 17

N.Y. Pub. Auth. Law § 1266 ..................................................................... 17

N.Y. Pub. Auth. Law § 1276 ............................................................... 12, 13

## <u>Other</u>

36 C.F.R. § Part 1191 ............................................................................. 6

49 C.F.R. § 37.42 .................................................................................. 6

Fed. R. Civ. P. 23 ...................................................... 1, 20, 22, 23, 24

*Wright, Miller, & Kane*, 7B Fed. Prac. & Proc. Civ. § 1795 (3d ed.) ........................................ 20

**INTRODUCTION**

This lawsuit does not belong in federal court, and should be dismissed. Plaintiffs allege that the New York City Transit Authority ("NYCTA") and the Long Island Rail Road Company ("LIRR") (both collectively referred to as the Metropolitan Transportation Authority or "MTA") ought to install physical platform barriers at its many hundreds of subway and train platforms to prevent people from falling onto the tracks.  In the original complaint, Plaintiff West—the sole plaintiff at the time—alleged that she was injured on a subway platform and asserted negligence and related claims under New York law.  Attempting to concoct federal jurisdiction over her purely state-law claims, West—who, like Defendants, is a citizen of New York—brought this suit as a putative class action, claiming that diversity jurisdiction existed under the Class Action Fairness Act ("CAFA").  After Defendants filed a pre-motion conference letter pointing out that the purported class could not possibly be certified under Rule 23 of the Federal Rules of Civil Procedure, the Complaint was hastily amended to add frivolous federal claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act in a transparent attempt to fix the jurisdictional flaw.

As even a cursory review plainly shows, Plaintiffs have not pled a valid federal claim under the ADA and Rehabilitation Act. Those laws and their implementing regulations are crystal clear that platform barriers are not required in order to make subway stations accessible to persons with disabilities.  Under the ADA and the Rehabilitation Act, it is exclusively up to the U.S. Department of Transportation ("DOT") to set accessibility standards for services at public transportation facilities.  Those standards anticipate that platforms may have edges and require that the MTA install platform edge warnings.  They do not require the different infrastructure that Plaintiffs' demand.  The MTA has installed platform edge warnings in accordance with the

1

DOT's ADA regulations and is in compliance with the DOT's accessibility standards. Accordingly, Plaintiffs' individual claims under the ADA and Rehabilitation Act, as well as those purportedly alleged on behalf of the class, must be dismissed.

Without a valid federal claim, the rest of this action should be dismissed for lack of jurisdiction. Plaintiffs cannot satisfy the requirements for diversity jurisdiction under CAFA. And the Court should not exercise its supplemental jurisdiction over Plaintiffs' state-law negligence claims (or their newly added claims under the New York State and New York City Human Rights laws).

Moreover, even if this Court were to reach Plaintiffs' state and local-law claims, it should dismiss them anyway. Plaintiffs' common-law negligence claim is based on their critique of the MTA's station and platform designs. But the MTA cannot be liable in negligence for the exercise of its governmental discretion. Determinations as to the manner of taking and discharging passengers and the corresponding design of the stations and platforms involve sophisticated engineering considerations and require decisions about how best to allocate the MTA's financial resources – all governmental functions and matters solely within the MTA's governmental discretion  and for which the MTA is immune from suit.    The New York State Human Rights Law specifically exempts Defendants from its requirements.  And MTA is immune from suit under the New York City Human Rights Law.

Finally, if this claim is not dismissed, the Court should deny class certification. While denial of class certification at this early stage is unusual, it is warranted in this case. It is patently obvious from the face of the Amended Complaint that this class cannot be certified under any circumstances because of its vast size – many millions of individuals – and because of the Amended Complaint's failure to allege the commonality or typicality requirements.

## THE CLAIMS ALLEGED IN THE FIRST AMENDED COMPLAINT

### A.   The Parties

Defendant MTA is a public benefit corporation established by New York Public Authorities Law ("PAL") § 1263 with its headquarters in New York.  (Am. Compl. ¶ 18.) Defendant NYCTA is a public benefit corporation established by PAL § 1201 with its headquarters in Brooklyn, New York.  (*Id.* ¶ 20.)  Defendant LIRR is a subsidiary public benefit corporation of the MTA and is headquartered in Queens, New York.  (*Id.* ¶ 22.)

Plaintiff West is a visually impaired Manhattan resident.  (Am. Compl. ¶¶ 16, 58.) Plaintiff Mariani is a resident of Elmont, New York.  (*Id.* ¶ 17, 67.)

### B.   Platform Edges In the Subways and Long Island Rail Road Platforms

As required by Department of Transportation regulations, Defendants employ two-foot wide "tactile strips" to warn visually impaired customers of the platform edge.  (*Id.* ¶ 5.) Plaintiffs allege that these strips are insufficient because they "do not orient visually impaired people regarding exactly how far from the edge they are or where the train door is."  (*Id.*) Plaintiffs claim that Defendants are obligated to install physical barriers—either floor-to-ceiling glass barriers, known as Platform Screen Doors, or chest-high barriers, known as Automated Platform Gates—between the platform and track at all of its subway and commuter rail stations (which they refer to as the "Transit System").  (*Id.* ¶¶ 81-83.)  Plaintiffs claim that "Defendants have considered plans to install platform barriers with gates since the 1980s" but have prioritized other projects, including projects to improve accessibility of its subways and commuter railroad stations.  (*Id.* ¶¶50-52.)  Plaintiffs claim they have suffered personal injuries while attempting to board trains, and they attribute their injuries to the lack of platform barriers.  (*Id.*at ¶¶16-17.)

### C.  Class Action Allegations

Plaintiffs seek to represent a class consisting of:

> All persons or entities in New York who paid to use the Transit System in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Class").

(*Id.* ¶ 87.)  Plaintiffs additionally seek to represent a subclass consisting of:

> All Class Members who were injured due to the failure of Defendants to install platform barriers (the "Physical Injury Subclass").

(*Id.* ¶ 88.)  Finally, Plaintiff West seeks to represent a subclass consisting of:
> All Class Members who are visually impaired (the "Visually Impaired Subclass").

(*Id.* ¶ 89.)  Plaintiffs also allege that there are common questions of law and fact affecting all Class members, including:

> (iii) whether Plaintiff [West], Plaintiff [Mariani], and Class members sustained injuries or damages as a result of Defendants' negligence and dangerous Transit System

(*Id.* ¶ 96.)

### D.  Plaintiffs' Causes of Action

Plaintiffs assert five causes of action: Count One sounds in negligence (*id.* ¶¶ 103-105); Count Two is brought under the Americans With Disabilities Act, 42 U.S.C. ch. 126 § 12101 *et seq.* (*id.* ¶¶ 106-119); Count Three is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (*id.* ¶¶ 120-125); Count Four is brought under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (*id.* ¶¶ 126-134); and Count Five is brought under the New York State Human Rights Law, N.Y. Exec. Law § 292 et seq. (*id.* ¶¶ 135-150).[1]

---

[1] Plaintiffs do not appear to be raising any federal claims against LIRR.  While the claims are brought against the Defendants on behalf of Plaintiff West and other visually impaired people, the Amended Complaint does not allege that West ever travelled on LIRR.  It states only that West was injured on NYCTA.  Nor does it claim that Plaintiff Mariani (who was allegedly injured at the LIRR's Penn Station facility) was visually impaired or suffered from any disability such that the ADA or Rehabilitation Act would apply to her.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER FEDERAL LAW

The ADA and Rehabilitation Acts[2] do not require that Defendants provide their disabled customers with more services than their non-disabled customers. "The central purpose of the ADA and § 504 of the Rehabilitation Act," the Second Circuit has recognized, "is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998). They require only that covered entities provide "'meaningful access' to such services as may be provided, whether such services are adequate or not. The statutes, in other words, do not require 'optimal' accommodations." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 641 (S.D.N.Y. 2013) (citations omitted); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985).

The ADA is implemented through regulations by the DOT and the Department of Justice, setting forth detailed instructions to entities on how to comply with the ADA. Public entities are regulated under Title II of the ADA, which is itself divided into two parts. "Part A applies to public entities generally, and Part B applies to public entities providing transportation . . . . As the Second Circuit has noted, 'the Secretary of Transportation has the exclusive authority to issue final regulations implementing Part B.'" *Presmarita v. Metro-North Commuter R.R. Co.*, No. 17-cv-1118, 2017 WL 6542515, at *3 (S.D.N.Y. Dec. 21, 2017) (citation omitted).

Plaintiffs claim that, because Defendants have not installed platform gates or guardrails, "Defendants have discriminated and continues [sic] to discriminate against Plaintiff WEST by excluding visually impaired individuals the opportunity to participate in or benefit from the

---

[2] Although there are "subtle differences" between the two statutes, they are generally treated identically, and courts consider them "in tandem." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

services, programs or activities of Defendants" (Compl. ¶ 111).   Leaving aside the billions of dollars it would cost to retrofit the MTA's entire subway and rail system as Plaintiffs demand, MTA already fully complies with the ADA and need not install platform gates or barriers.  The Department of Transportation's regulations implementing the ADA under Part B explicitly provide for transportation providers to install "detectable warnings" on platform edges that do not have platform screens or guards.  The MTA is in compliance with this requirement.

Appendix D of the Department of Transportation's implementing regulations contains detailed instructions to transportation providers regarding how to implement the ADA.  With regard to platform edges, it states that "Rail platforms shall comply with 810.5," and then sets out the specific elements of 810.5, which includes

> Detectable Warnings.  Platform boarding edges not protected by platform screens or guards shall have detectable warnings complying with 705 [Detectable Warnings] along the full length of the public use area of the platform.

36 C.F.R. § Part 1191, App. D, at 810.5.2.  Regulation 705.2 ("Platform Edges") further states that "[d]etectable warning surfaces at platform boarding edges shall be 24 inches (610 mm) wide and shall extend the full length of the public use areas of the platform."  *Id*. at 705.2.

Even for stations constructed or altered after February 1, 2012, the regulations anticipate that there will be platform edges.  *See* 49 C.F.R. § 37.42(e)(1) ("Service in an Integrated Setting to Passengers at Intercity, Commuter, and High–Speed Rail Station Platforms Constructed or Altered After February 1, 2012.") (stating that for platforms that are newly constructed or altered after February 1, 2012, except as otherwise provided, "any obstructions on a platform . . . shall be set at least six feet back from the *edge* of the platform" and providing what to do if there is not enough space on the platform to meet this requirement) (emphasis added)).

There is no ambiguity in the DOT's regulations. Platform barriers or screens are not required to comply with the ADA. This case is therefore similar to *Presmarita*, in which Judge Forrest held that Metro-North was not required to provide wheelchair accommodations to customers at Grand Central Terminal because the DOT regulations did not require that accommodation. *See Presmarita*, 2017 WL 6542515, at *4 ("Where the DOT wished to do so—in airports and for ships, for example—it promulgated regulations affirmatively requiring wheelchair services to be provided to wheelchair-bound passengers. It has not, however, done so for trains and commuter railroads.") (citation omitted). Pursuant to the DOT's implementing regulations, therefore, Defendants are not required to install platform gates or barriers to comply with the ADA. Accordingly, Plaintiffs' ADA claim must be dismissed.

## II.  THE STATE AND LOCAL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.  The Court Should Decline to Exercise Supplemental Jurisdiction

Although 28 U.S.C. § 1367(c)(3) allows this Court the discretion to retain jurisdiction over supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citation omitted).

Here, given the early stage of this proceeding, with no discovery taken, and no investment of time by this Court or the parties, neither judicial economy, convenience, fairness, nor comity compel this court to retain jurisdiction. Should Plaintiffs wish to press their state law claims, they may easily do so by simply refiling their action "across the street."

7

**B. There is No Diversity Jurisdiction Over the State Law Claims Under the Class Action Fairness Act**

Plaintiffs allege that this Court has diversity jurisdiction over their state and local law claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  CAFA enlarges a district court's diversity jurisdiction to include class actions in which "the matter in controversy exceeds the sum or value of $5,000,000" and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant."  *Id.* § 1332(d)(2)(A).  But CAFA includes several statutory exceptions that preclude jurisdiction over plaintiff's state and local law claims.

**1. The "Home State Exception" Precludes Jurisdiction**

Plaintiffs' class action claims fall within the "home state exception" and therefore the Court must decline jurisdiction.  Under this exception, "[a] district court shall decline to exercise jurisdiction under [CAFA] over a class action in which . . . two-thirds or more of the members of all proposed classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4)(B).

In determining the citizenship of putative class members for the purpose of the CAFA exceptions, the Court may make "reasonable assumptions about the makeup of the putative class."  *Commisso v. PricewaterhouseCoopers LLP*, 11 Civ. 5713, 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012) (finding it reasonable to assume that at least one-third of the putative class resided in New York where class was limited to employees at defendant's New York office and defendant submitted human resource data indicating that most employees listed a New York residence); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (Chin, J.) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New

York."); *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 189 (E.D.N.Y. 2009) (applying CAFA exception based on "the eminently reasonable assumption that the majority . . . of those buried, or desiring to be buried, in a Queens cemetery are New York residents").

Here, the would-be class is "[a]ll persons or entities *in New York* who paid to use the Transit System in New York during the applicable limitations period[.]"  (Am. Compl. ¶ 87 (emphasis added).)  Although precise statistics concerning the citizenship of subway and commuter rail passengers are not readily available, nearly all users of the Long Island Rail Road, and a large majority of users of the New York City subway are New York residents.  In particular, members of the proposed visually impaired subclass are almost entirely New York residents.  *See* Decl. of Brian Saltz on behalf of Long Island Rail Road, and Decl. of James Kerwin on behalf of New York City Transit Authority.

Each of the Defendants in this action is also a New York citizen.  *See* 28 U.S.C. § 1332(c)(1).

Because more than two-thirds of the putative class members and all of the Defendants are New York citizens, the "home state exception" applies and the Court must decline jurisdiction over Plaintiffs' state and local law claims.

**2.  The "Local Controversy Exception" Precludes Jurisdiction**

Plaintiffs' claims also fall within CAFA's "local controversy exception" and therefore diversity jurisdiction fails for this reason as well.  Under this exception, the court must decline jurisdiction where:

> (II) at least 1 defendant is a defendant--
>     (aa) from whom significant relief is sought by members of
>     the plaintiff class;
>     (bb) whose alleged conduct forms a significant basis for the
>     claims asserted by the proposed plaintiff class; and

> > (cc) who is a citizen of the State in which the action was originally filed; and
> > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons .

28 U.S.C. § 1332(d)(4).

Here, all of the Defendants are New York citizens.  All of the "alleged conduct" and all of the "principal injuries" occurred in New York.  And no class action "asserting the same or similar factual allegations against any of the defendants" has been filed in the past three years.  Accordingly, the local controversy exception applies and this Court must decline jurisdiction over Plaintiffs' state and local law claims.

### 3. The "Discretionary Exception" Also Applies, and the Court Should Decline Jurisdiction.

Even if less than two-thirds of the putative class members were New York citizens, the Court should nonetheless decline to exercise jurisdiction under CAFA's "discretionary exception."  Under this exception, a district court may decline to exercise jurisdiction over a class action "in the interests of justice and looking at the totality of the circumstances." 28 U.S.C. § 1332(d)(3).  The threshold requirement for application of the "discretionary exception" is  that "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants [must be] citizens of the State in which the action was originally filed."  *Id.*  As with the citizenship determination required for the mandatory CAFA exceptions, this determination should be made through a combination of "readily available information" and "reasonable assumptions" sufficient to give rise to a "rebuttable presumption that the citizenship requirement is met."  *Commisso*, 2012 WL 3070217, at *4.

If the one-third threshold is met, a court is directed to consider (1) "whether the claims asserted involve matters of national or interstate interest"; (2) "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States"; (3) "whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction"; (4) "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants"; (5) "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States"; and (6) "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3)(A)-(F).

Here, it is plain that the discretionary exception to CAFA jurisdiction applies. First, the threshold for the discretionary exception is met; *i.e.*, at least one-third of those who ride the subways and commuter railroads are New York citizens. Second, the statutory factors overwhelmingly favor application of the exception. Plaintiffs' claims do not involve matters of national or interstate interest. Rather, they are local, involving the design of a regional transit system and the requirements of state and local law (aside from the ADA claims discussed above, which must be dismissed). Therefore, factors one, two, and four strongly disfavor the exercise of federal jurisdiction. Moreover, it is readily apparent that the overwhelming majority of class members are citizens of New York, while the citizenship of those non-New Yorkers who may be members of the class is widely dispersed among other states and indeed other nations, if the class is defined to include all those who ride a subway or a commuter railroad in the New York City

metropolitan area, who would include innumerable (and unidentifiable) tourists from around the globe. As such, factor five also weighs against this action being heard in federal court. Finally, no lawsuit has been filed within the past three years asserting the same or similar claims. Thus, factor six also disfavors federal jurisdiction.

Because the Plaintiffs cannot satisfy CAFA, there is no diversity jurisdiction over Plaintiffs' state law claims in this case. With no viable federal claim either, as argued in Point I, above, and where, as here, supplemental jurisdiction should not be exercised, the Court should dismiss the entirety of this case without and consideration of Plaintiffs' state law claims.[3]

## III.   THE STATE AND LOCAL LAW CLAIMS FAIL AS A MATTER OF LAW

### A. Absent Class Members' State And Local Law Claims Must Be Dismissed For Failure To Satisfy Conditions Precedent To Suit

PAL § 1276 "is one of a number of state statutes by which the State . . . has conditioned its waiver of sovereign immunity on plaintiff's compliance with certain notice, pleading, or pre-suit claim requirements." *Shaw v. Long Island R.R. Co*., No. 16-cv-6972, 2017 WL 5634122, at *1 (E.D.N.Y. Nov. 22, 2017) (Cogan, J.), *reconsideration denied*, 2018 WL 748674 (E.D.N.Y. Feb. 7, 2018). It provides that in actions for damages against the MTA or any of its subsidiary corporations, like LIRR, plaintiff must allege in the pleading that they have made a pre-suit demand upon the defendant, that at least thirty days have elapsed, and that the defendant has refused or neglected to adjust the claim. N.Y. Pub. Auth. Law § 1276(1); *Andersen v. Long Island R.R.*, 88 A.D.2d 328, 329 (2d Dep't 1982) (construing PAL §1276 to include MTA subsidiaries), *aff'd*, 59 N.Y.2d 657 (1983); *see also* N.Y. Pub. Auth. Law § 1212 (notice of claim requirement for NYCTA). Additionally, actions sounding in tort, except for wrongful death,

---

[3]Additionally, because the proposed class could never be certified under FRCP Rule 23 (as discussed in Point III, below) CAFA jurisdiction may not even be invoked here. *See McGauhey v. Treistman*, No. 05 Civ. 7069, 2007 WL 24935, at *10 (S.D.N.Y. Jan. 4, 2007).

require that a notice of claim be filed within 90 days after the claim arises.  N.Y. Pub. Auth. Law § 1276(2) (incorporating N.Y. Gen. Mun. Law ("GML") 50-e by reference); N.Y. Pub. Auth. Law § 1212(2).  Plaintiffs have offered no indication that any absent class members have made a demand on Defendants.  Therefore,  absent class members' claims pursuant to the New York State and New York City Human Rights Laws, as well as their common law negligence claims, must be dismissed for failure to comply with PAL § 1276(1) and PAL § 1212(1).  *Shaw*, 2017 WL 5634122, at *8.

Additionally, "[a] class action for personal injuries may be maintained against a municipality under the General Municipal Law only if an individual notice of claim has been served by each putative member of the class where the class claim names each of the individual claimants." 62A N.Y. Jur. 2d Gov't Tort Liab. § 389 (citation omitted).  There is no allegation that any class members other than class representatives have complied with the Notice of Claim requirement.  Notice of claim requirements are strictly construed and "[f]ailure to comply with [§50-e] requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999).

The tort claim asserted by the absent class members must be dismissed for their failure to satisfy the notice of claim requirements of the Public Authorities Law.

**B.  Plaintiff's Negligence Claim Is Barred By The Doctrine Of Governmental Immunity**

Plaintiffs' negligence claim arises from Defendants' discretionary decisions regarding the design of the subway and commuter railroad system and the allocation of public resources.  Because these decisions entail governmental decision-making, Defendants are protected by common law governmental immunity, and Plaintiffs' negligence claims must be dismissed.

The Court of Appeals has repeatedly recognized that "the common-law doctrine of governmental immunity . . . shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions." *Valdez v. City of New York*, 18 N.Y.3d 69, 75-76 (2011); *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983). "This limitation on liability reflects separation of powers principles and is intended to ensure that public servants are free to exercise their decision-making authority without interference from the courts." *Valdez*, 18 N.Y.3d at 76. "It further 'reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.'" *Id.* (quoting *Mon v. City of New York*, 78 N.Y.2d 309, 313 (1991)).

In determining whether a public agency enjoys governmental immunity, the court must decide whether "the specific act or omission out of which the injury is claimed to have arisen" involved the exercise of a governmental or a proprietary function. *Weiner v. Metro. Transp. Auth.*, 55 N.Y.2d 175, 182 (1982). As the Court of Appeals has explained, "[t]he functions of a governmental entity can be viewed along a 'continuum of responsibility'" with "basic proprietary obligation[s]" such as "the repair of steps or the maintenance of doors" at one end and plainly governmental functions such as "general police and fire protection" at the other. *World Trade Ctr. Bombing Litig. v. Port Auth. of N.Y. & N.J.*, 17 N.Y.3d 428, 446 (2011) (quoting *Miller v. State*, 62 N.Y.2d 506, 511-12 (1984)). "Where . . . the public entity serves a dual proprietary and governmental role, the analysis involves determining where along the spectrum of proprietary and governmental functions the defendant's alleged negligence falls into." *Kadymir v. N.Y.C. Transit Auth.*, 55 A.D.3d 549, 551 (2d Dep't 2008).

14

Governmental functions are typified by the exercise of discretionary decision-making for the good of the general public. *Valdez*, 18 N.Y.3d at 79-80 (holding that discretionary decision-making giving rise to governmental immunity involves "the exercise of reasoned judgment which could typically produce different acceptable results" (citation omitted)). Also characteristic of governmental functions are decisions regarding the allocation of public resources. Policy decisions, planning, and design are typically government functions. *E.B. Metal & Rubber Indus. Inc. v. County of Washington*, 102 A.D.2d 599, 602 (3d Dep't 1984) (holding that the planning and design of a dike was governmental because they "constituted the exercise of municipal discretion," whereas "the construction and maintenance of the dike was proprietary"); *see also Simpson v. Wash. Metro. Area Transit Auth.*, 688 F. Supp. 765, 767 (D.D.C. 1988) (holding that transit authority's "design decision concerning the distance of the gap between the platform and the subway train constitutes a discretionary decision and falls squarely within the parameters of [the authority's] governmental functions," entitling the authority to immunity), *aff'd*, 1990 WL 104842 (D.C. June 5, 1990).

There is no doubt that decisions by MTA and NYCTA are governmental functions. The enabling legislation for NYCTA provides that:

> in all respects for the benefit of the people of the State of New York and the authority shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted by this title.

N.Y. Pub. Auth. Law §1202(2); *see also* N.Y. Pub. Auth. Law § 1264(2) (MTA enabling legislation). Moreover, Plaintiffs allege that "Defendants have considered plans to install platform barriers with gates since the 1980s's" but decided to "divert" funds to "other purposes" such as a program of elevator installation intended to improve ADA accessibility. (Am. Compl. ¶ 50.) In a similar vein, Plaintiffs complain about "Defendants' misprioritization of funds,"

which they allege "constitutes illegal negligence." (*Id.* ¶ 51).   These are precisely the kind of allegations that courts have held may *not* be litigated. *See Abrams v. N.Y.C. Transit Auth.*, 39 N.Y.2d 990 (1976) (dismissing proceeding brought against NYCTA to abate subway noise on the grounds that such a proceeding   improperly interposes plaintiffs and the courts in the management of public enterprises and involve "questions of judgment, discretion, allocation of resources, and priorities" inappropriate for judicial resolution).

Plaintiffs may disagree with Defendants' decision not to install barriers on subway and commuter railroad platforms, or their decision to prioritize funding for other crucial projects. But these decisions are part of MTA's governmental functions, and may not be subject to judicial supervision under the guise of a negligence action.   Plaintiffs' own allegations make clear that their negligence claim is nothing more than an attempt to invade Defendants' discretionary authority to build and operate a mass transit system using public resources.   The claim is barred by the government immunity doctrine and must be dismissed.

### C.  The New York State Human Rights Law Claim Must be Dismissed

Plaintiffs' claim under the New York State Human Rights Law is based on N.Y. Exec. L. §§ 296(2)(c)(i)  &  (ii), which requires, among other things, that certain places of public accommodation reasonably modify their facilities in order to accommodate individuals with disabilities.  However, the Legislature carefully carved out an explicit exemption from this duty for "public transportation facilities, vehicles or services owned, leased, or operated by . . . any public benefit corporation or authority," which includes Defendants.  N.Y. Exec. L. § 296(2)(e). Accordingly, Defendants are explicitly exempt from the provisions of the New York State Human Rights Law and this claim should be dismissed.

### D.  The New York City Human Rights Law Claims Must Be Dismissed

Plaintiffs assert that the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, requires barriers on all subway and LIRR platforms.  Any claim under the NYCHRL must fail because the MTA is immune from suit under the NYCHRL, and because state law pre-empts local law in the area of disability accommodations on public transportation.

### 1.  The State Legislature Has Immunized Defendants From NYCHRL Claims

PAL § 1266(8) expressly bars any municipality, including New York City, from asserting "jurisdiction" over any facilities of the MTA, NYCTA, or their subsidiaries:

> Except as hereinafter specially provided, no municipality or political subdivision . . . shall have jurisdiction over any facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, or any of their activities or operations. The local laws, resolutions, ordinances, rules and regulations of a municipality or political subdivision, heretofore or hereafter adopted, conflicting with this title or any rule or regulation of the authority or its subsidiaries, or New York city transit authority or its subsidiaries, shall not be applicable to the activities or operations of the authority and its subsidiaries, and New York city transit authority, or the facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, except such facilities that are devoted to purposes other than transportation or transit purposes.

N.Y. Pub. Auth. Law § 1266(8); *see also* §§ 1261(1), 1263 (defining "authority" as the Metropolitan Transportation Authority).

The stations at issue in this case are obviously facilities devoted to "transportation or transit purposes" within the meaning of the statute, and Plaintiffs concede as much.  *See, e.g.*, Am. Compl. ¶¶ 18-25 (explaining that Defendants fund and maintain subway and rail stations for transportation purposes).  The Legislature explicitly created Defendants as independent state authorities tasked with providing transit services and maintaining exclusive control over their own facilities.  *See* N.Y. Pub. Auth. Law §§ 1264, 1202.  The City therefore lacks jurisdiction to regulate, via the NYCHRL, Defendants' acts or omissions with respect to their stations, which

17

are devoted solely to transit purposes. The courts agree that, when it comes to transit facilities, Defendants enjoy "broad statutory immunity" from local laws. *In re: Penny Port LLC v. N.Y.C. Dep't of Health*, N.Y.L.J., Sep. 27, 1999 at 30 (Sup. Ct. N.Y. Cty. 1999). Where plaintiffs have attempted to apply local laws in such a way as to interfere with Defendants' core transportation functions, courts have uniformly interpreted § 1266(8) to bar suit.[4]

### 2. The State Human Rights Law Pre-Empts Application of City Law With Respect to the Accessibility of Public Transportation Facilities

A New York State statute pre-empts a local law if (1) the Legislature has expressed an intent to occupy the field by assuming full regulatory responsibility, or (2) the local law is inconsistent with the state statute. *N.Y.C. Health & Hosps. Corp. v. Council of City of N.Y.*, 303 A.D.2d 69, 74-75 (1st Dep't 2003) (citing *Consol. Edison Co. of N.Y. v. Town of Red Hook*, 60 N.Y.2d 99, 107 (1983)). Both prongs independently apply here and defeat Plaintiffs' claims in this matter.

---

[4] *See, e.g.*, *Penny Port*, N.Y.L.J., Sep. 27, 1999 at 30 (City smoking regulations could not be applied within Grand Central restaurant)*; CBS Outdoor, Inc. v. City of New York*, 50 Misc. 3d 283, 290-95 (Sup. Ct. N.Y. Cty. 2015) (City zoning laws did not apply to revenue-producing billboards on MTA property because doing so would interfere with one of MTA's statutory purposes: generating revenue for transit); *People v. Metro-North Commuter R.R. Co.*, 132 Misc. 2d 1072, 1073 (Crim. Ct. Bronx Cty. 1986) (City code provisions regulating fuel truck operations on City streets conflicted with MTA subsidiary's statutory power to control and direct the operation of transportation facilities and equipment); *People v. Long Island R.R.*, 90 Misc. 2d 269, 269-70 (N.Y. App. Term 2d Dep't 1976) (Suffolk County Sanitary Code provision regulating emission of air contaminants could not interfere with railroad's power to use diesel fuel for operation of its trains), *aff'd on opinion at App. Term*, 41 N.Y.2d 1039 (1977); *Metro. Transp. Auth. v. Village of Tuckahoe*, 67 Misc. 2d 895, 900, 903 (Sup. Ct. Westchester Cty.) (village building code cannot bar MTA's construction of a walkway to a train station, which "conforms to the basic purposes and powers granted to it"), *aff'd*, 38 A.D.2d 570 (2d Dep't 1971); and 1985 Op St Compt. No. 85-14 (MTA is exempt from town zoning and building regulation in ownership/operation of railroad station as operating such station is part of MTA's governmental public transportation purpose). Courts have only declined to apply § 1266(8) immunity where a local law's requirements are, in the courts' view, "tangential" to Defendants' core transportation and transit functions, such as in the case of NYCHRL's employment discrimination provisions. *See, e.g.*, *Tang v. N.Y.C. Transit Auth.*, 55 A.D.3d 720 (2d Dep't 2008). *Tang* and similar cases are distinguishable from this case, where Plaintiffs seek to apply the NYCHRL to rail and subway stations, the design and management of which indisputably form part of Defendants' core transportation and transit functions.

*First*, in enacting Executive Law § 296(2), the Legislature "has demonstrated an intent to preempt the entire field and thereby preclude any further local regulation." *N.Y.C. Health & Hosps. Corp.*, 303 A.D. 2d at 74.  The Legislature added the relevant provisions to the New York State Human Rights Law in 2007, and they form a comprehensive scheme by which the term "discriminatory practice" is defined to include failures to make reasonable modifications, provide auxiliary aids and services, and remove architectural barriers to access where necessary. N.Y. Laws of 2007, Ch. 394 § 1. Aware of the extensive already-existing federal and state transportation requirements to provide access for transportation customers with disabilities, the Legislature unmistakably exempted Defendants from the scheme (Exec. Law § 296(2)(e)) and in doing so, signified the intent to pre-empt the field of accommodations for transportation customers with disabilities.  This alone is sufficient to pre-empt the application of the NYCHRL in this case.

*Second*, the application of the NYCHRL is pre-empted by the inconsistency between state and local law, which is "not limited to cases of express conflict." *Consol. Edison*, 60 N.Y.2d at 108.  Inconsistency also exists where a local law is wielded to prohibit conduct which is permitted by state law. *N.Y.C. Health & Hosps. Corp.*, 303 A.D. 2d at 78.  Here, Plaintiffs purport to use a local law to render illegal Defendants' decision not to install platform screen doors in subway and rail stations. However, the Legislature has explicitly exempted Defendants from the affirmative-modification requirements imposed by the City law (Exec. Law § 296(2)(e)), resulting in an impermissible conflict and pre-empting application of the City law.

*Third*, and finally, this case does not fall within the "narrow exception" to the pre-emption doctrine, which requires that the local law "only incidentally touches on the regulation or has only a tangential impact on the body's power or functions or state legislative objective,"

19

*and* "is a law of general application." *N.Y.C. Health & Hosps. Corp.*, 303 A.D.2d at 74 (quotations omitted). *See also DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 97 (2001). The application of the NYCHRL to Defendants' subway and commuter rail stations would have more than an "incidental" or "tangential" impact; it would go to the core of Defendants' legislatively-prescribed purpose, and would require a massive expenditure of resources to build hundreds upon hundreds of platform screen doors.

Because Defendants are immune from suit under the NYCHRL, and because state law preempts the requirements of the NYCHRL, the local law claims must be dismissed.[5]

## IV.    CLASS CERTIFICATION SHOULD BE DENIED

Even assuming Plaintiffs had properly alleged any viable claims, their class action allegations are deficient and prevent certification of a class. Courts must consider issues of class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Class allegations may also be dispensed with at an early stage when it is clear from the pleadings that the representation of absent persons is untenable. *Wright, Miller, & Kane*, 7B Fed. Prac. & Proc. Civ. § 1795 (3d ed.)

The Supreme Court has described a proposed class of 1.5 million plaintiffs as "one of the most expansive class actions ever." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 342 (2011). Here, Plaintiffs seek to represent a class consisting of "[a]ll persons or entities in New York who paid to use the Transit System in New York during the applicable limitations period, and/or such subclass as the Court may deem appropriate." (Am. Compl. at ¶ 87.)  The average daily

---

[5] Even if the New York State and/or City Human Rights Laws applied in the circumstances of this case, Plaintiffs claims would still be subject to dismissal.  There is nothing in Plaintiffs' allegations that even remotely suggests that the New York City subway system, which is fully compliant with the ADA's implementing regulations, as discussed above, somehow discriminates against persons with visual disabilities merely because they do not have platform edge barriers.  Indeed, the Complaint shows that persons with visual disabilities frequently and successfully utilize the subway system despite the lack of barriers.

ridership of the subway system alone, not including Metro-North and Long Island Rail Road, is over five million riders.  *S*ee MTA, Introduction to Subway Ridership, http://web.mta.info/nyct/facts/ridership/.  Plaintiffs' proposed class will not be able to be certified because it would be administratively unfeasible to determine whether a particular individual is a member, let alone how to contact these individuals to satisfy due process requirements.  No amount of discovery could cure these deficiencies.

Moreover, the Complaint recognizes that the vast majority of the proposed class members suffered no injury and are therefore inappropriate class members.  *See* Am. Compl. at ¶ 88; *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687 (1973).  Plaintiffs' proposed class fails as a matter of law because the Second Circuit has held that "no class may be certified that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).

### A.  Plaintiffs' Proposed Subclasses Are Also Unworkable

The Physical Injury Subclass also cannot be maintained because courts must reject class definitions that "require addressing the central issue of liability" in a case to determine membership, because the membership inquiry "essentially require[s] a mini-hearing on the merits of each [plaintiff's] case."  *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).  This subclass definition requires a determination as to the cause of the injuries each class member purportedly suffered.  Potentially millions of mini-hearings to determine the cause of injury for each individual claiming to satisfy the subclass definition would defeat the principle of economy—the bedrock justification for representative litigation.

Plaintiffs' second proposed subclass—all visually impaired class members—must also be rejected.  (*See* Am. Compl. at ¶ 89.)  The class necessarily includes countless individuals who

lack standing because they have no injury, *see infra*. Further, the open-ended class period runs afoul of Rule 23's requirements of ascertainability and notice requirements. *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015); *Rodriguez v. It's Just Lunch Int'l*, No. 07-cv-9227, 2018 WL 3733944, at *6 (S.D.N.Y. Aug. 6, 2018).

### B.  Plaintiffs Cannot Meet The Rule 23(a) Requirements for Class Certification

A case may only be litigated as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Plaintiffs cannot satisfy the commonality requirement.  Commonality requires that there be "issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  Plaintiffs plead that common questions of law and fact include "whether Plaintiffs West, Plaintiff Mariani, and Class members sustained injuries or damages as a result of Defendants' negligence and dangerous Transit System."  (Am. Compl. at ¶ 96.)  This question of causation is precisely the type of inquiry that cannot be resolved for all class members in one stroke.  Any determination of liability and damages would be specific to each class member, and there may be different affirmative defenses applicable to each alleged incident.  Given the highly individualized nature of personal injury actions, the certification of a personal injury class action is disfavored in the Second Circuit.  *See, e.g.*, *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 164-66 (2d Cir. 1987) (criticizing use of class in tort case due to inherent problems of individualistic causation).

The requirement of typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Chime v. Peak Sec. Plus, Inc*., 137 F. Supp. 3d 183, 209 (E.D.N.Y. 2015) (Kuntz, J.) (quoting *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)). The variance in the types of alleged injuries weighs against class certification, as absent class members may have causes of action which Plaintiffs West and Mariani may not pursue.

The Amended Complaint demonstrates that the named Plaintiffs' claims are not typical of those they purport to represent. Plaintiff West injured her foot and Plaintiff Mariani injured her leg, both while attempting to board the train. (Am. Compl. at ¶¶ 57-68.) Throughout the Amended Complaint, however, Plaintiffs identify specific instances of purported class members suffering much more severe injuries while in the subway system, and these injuries are unlike those allegedly suffered by the class representatives. (Am. Compl. at ¶¶ 30-42.) On the other hand, many proposed class members have no injury at all. The named Plaintiffs' claims are clearly not typical of the proposed class, and therefore they fail the typicality requirement.

### C.  Plaintiffs Cannot Meet the Rule 23(b) Requirements for Class Certification

In addition to meeting all four requirements of Rule 23(a), the class must fit into one of the three categories defined by Federal Rule of Civil Procedure 23(b). Plaintiffs purport to certify a class pursuant to Rule 23(b)(2) and/or Rule 23(b)(3), (Am. Compl. at ¶¶ 99-100), but neither is appropriate.

Rule 23(b)(2) applies where defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The thrust of Plaintiffs' request for injunctive relief necessarily depends on a finding that Defendants are in violation of

federal, state, and local anti-discrimination statutes.  As stated above, such claims fail as a matter of law, rendering class certification under Rule 23(b)(2) untenable.

Plaintiffs also cannot satisfy the rigorous requirements for 23(b)(3) certification.  The Federal Rules require that (b)(3) class members receive notice of the lawsuit and be afforded the opportunity to withdraw from the class at their option.  Fed. R. Civ. P. 23(c)(2)(B).  The lack of notice to putative class members violates due process.  *Wal-Mart*, 564 U.S. at 363.  Given that it would be impossible to ascertain the identities of potential class members in this lawsuit, as discussed above, the Court would not be able to certify a class.  Additionally, certification under Rule 23(b)(3) is only appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Individualized determinations regarding the cause of Plaintiffs' injuries substantially outweigh issues that may be common to all class members' claims.

The superiority prong of Rule 23(b)(3) requires Plaintiffs demonstrate that a class action promotes efficiency through the resolution of liability through a single action and the avoidance of inconsistent results.  Judicial economy is served through the certification of a class action if the matter affords numerous class members the opportunity to pursue low value claims that might not be worth litigating in individual actions.  *Rios v. Marshall*, 100 F.R.D. 395, 409 (S.D.N.Y. 1983).  That is not the case here.

Finally, Rule 23(b)(3)(D) directs the court to evaluate the management difficulties likely to be encountered if a class is certified.  As discussed in greater detail above, Plaintiffs' class is far too amorphous, such that proceeding with the proposed class would prejudice absent class members with distinct injuries as well as Defendants' ability to contest liability.

Accordingly, because the class allegations are not properly pled, and indeed because there is no way they could ever be properly pled, the class allegations should be struck in their entirety.  Moreover, because there is no way to certify the proposed class, even if Plaintiffs had been able to establish jurisdiction under CAFA, that jurisdiction would cease to exist.  *See McGauhey v. Treistman*, No. 05 Civ. 7069, 2007 WL 24935, at *3 (S.D.N.Y. Jan. 4, 2007) ("Because Plaintiff's motion for class certification must be denied, Plaintiff's action is no longer a class action, and this Court cannot retain subject matter jurisdiction in diversity over Plaintiff's action pursuant to the Class Action Fairness Act.").

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss all claims alleged in the Amended Complaint, and that the Court grant such other and further relief as the Court deems appropriate.

Dated:  New York, New York
       September 17, 2018

By:  _____
Ira J. Lipton (IL-4835)
Helene R. Hechtkopf (HH-7402)
Steven Silverberg (SS-5064)
Julian Brod (JB-8269)
Miriam J. Manber (MM-0263)
HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone: 212-689-8808

*Attorneys for Defendants Metropolitan Transportation Authority, New York City Transit Authority, and Long Island Rail Road Company d/b/a MTA Long Island Rail Road Company*

25