UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY WEST and JENIE LEE MARIANI, on behalf of themselves and all other similarly situated,

Plaintiffs,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY, NEW YORK CITY TRANSIT AUTHORITY, AND LONG ISLAND RAIL ROAD COMPANY D/B/A MTA LONG ISLAND RAIL ROAD COMPANY,

Defendants.

18-CV-1743 (WFK) (RML)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**


TABLE OF AUTHROTIES ..... ii

I. INTRODUCTION ..... 1

II. DEFENDANTS ARE IN COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT ..... 2

A. The DOT Regulations Define MTA's Obligations Under the ADA ..... 2

B. Plaintiffs' Disparate Impact Argument Is Inapplicable Here ..... 3

III. THIS CASE IS NOT SUBJECT TO FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ..... 4

IV. PLAINTIFFS' NEGLIGENCE CLAIMS ARE INAPPROPRIATE FOR A CLASS ACTION ..... 5

V. THE GOVERNMENTAL IMMUNITY DOCTRINE DOES APPLY ..... 6

VI. PLAINTIFFS' NEW YORK CITY HUMAN RIGHTS LAW CLAIMS ARE PREEMPTED BY STATE LAW ..... 9

## TABLE OF AUTHORITIES

**Cases**


*Abrams v. N.Y.C. Transit Auth.*, 39 N.Y.2d 990 (1976) ..... 8

*Brown v. County of Nassau* 736 F. Supp. 2d 602 (E.D.N.Y. 2010) ..... 3

*Cruz v. MTA Long Island Bus*, 10-CV-1862, 2010 WL 9933403 (E.D.N.Y. May 25, 2010) ..... 2

*Dalton v. New York*, 283 A.D. 1104 (2d Dep't 1954) ..... 5

*Disabled in Action of Penn. v. Se. Penn. Transp. Auth.*, 655 F. Supp. 2d 553 (E.D. Pa. 2009) ..... 1

*Garcia v. New York City Transit Auth.*, 114 A.D.3d 720 (2d Dep't 2014) ..... 5-6

*Howell v. New York City Tr. Auth.*, 123 A.D. 439 (1st Dep't 2014) ..... 6

*Klostermann v. Cuomo*, 61 N.Y.2d 525 (1984) ..... 7

*Lerner v. Casey*, 2 N.Y.2d 355 (1957) ..... 7

*Levine v. Amtrak*, 80 F. Supp. 3d 29 (D.D.C. 2015) ..... 3

*Mangano v. Silver*, 107 A.D.3d 956 (2d Dep't 2013) ..... 9, 10

*McGearty v. Manhattan R. Co.*, 15 A.D. 2 (2d Dep't 1897) ..... 5

*N.Y. State Club Ass'n v. City of New York*, 69 N.Y.2d 211 (1987) ..... 9

*N.Y. State Inspection, Sec. and Law Enf't Emps., v. Cuomo*, 64 N.Y.2d 233 (1984) ..... 8

*Patrolmen's Benevolent Ass'n v. City of New York*, 142 A.D.3d 53 (1st Dep't 2016) ..... 9

*Presmarita v. Metro-N. Comm. R.R. Co.*, No. 17 CV 1118 (KBF), 2017 WL 6542515 (S.D.N.Y. Dec. 21, 2017) ..... 2

*Scharff v. County of Nassau* No. 10 CV 4208 (DRH) (AKT), 2014 WL454639 (E.D.N.Y. June 2, 2014) ..... 3

*Weiner v. Metro. Transp. Auth.*,
55 N.Y.2d 175 (1982) ..... 7

**Statutes:**

28 C.F.R. §35.130(b)(7) ..... 2
36 C.F.R. § Part 1191 ..... 2
49 C.F.R. § 37.5(i)(3) ..... 3
49 C.F.R. § 37.9(a) ..... 1
42 U.S.C. § 12149 ..... 2
42 U.S.C. §§ 12182(b)(2)(A)(ii) ..... 2
Const. Law § 66(4) ..... 6
N.Y. Exec. Law § 296(2)(e) ..... 10
N.Y. Exec. Law § 296(e) ..... 9

## I. INTRODUCTION

Plaintiffs' opposition brief makes clear what Defendants have argued since this case was filed: this is a state-law negligence action repackaged as an untenable claim under the federal Americans with Disabilities Act. This attempt at contriving a claim that might confer federal jurisdiction fails. The Amended Complaint must be dismissed because it does not state a claim under the ADA. Without that federal claim, this Court should not retain jurisdiction over the remainder of the case, which is nothing more than a tort action that should be heard, if at all, in the state courts. Furthermore, negligence claims are inherently unsuitable for class action treatment, and it is clear from the face of the Amended Complaint that this suit should not proceed as a class action.[1]

## II. DEFENDANTS ARE IN COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

Plaintiffs argue that the members of what they call the visually impaired subclass do not have "ready, meaningful, and equal access" to the transit system because it does not have platform barriers. This is simply incorrect, and also addresses the wrong standard for determining whether Defendants are in compliance with the ADA and Rehabilitation Act.

### A. The DOT Regulations Define MTA's Obligations Under the ADA

Congress directed the Department of Transportation to ensure that public transportation agencies comply with the ADA. DOT, in turn says that "a transportation facility is readily accessible if it complies with the DOT's regulations and with [the United States Access Board's Accessibility Guidelines]." *Disabled in Action of Penn. v. Se. Penn. Transp. Auth.*, 655 F. Supp. 2d 553, 558-59 (E.D. Pa. 2009), *aff'd* 635 F.3d 87 (3d Cir. 2011); *see also* 49 C.F.R. § 37.9(a);

---

[1] Again, nowhere in their brief do Plaintiffs reference Defendant LIRR, arguing only about New York City Transit's subway system.

42 U.S.C. § 12149. The DOT's regulation for subway and train platforms is not, as Plaintiffs would have it, silent with regard to whether platform barriers are required. To the contrary, it provides that transportation providers are *not* required to install platform barriers:

> Detectable Warnings. Platform boarding edges not protected by platform screens or guards shall have detectable warnings complying with 705 [Detectable Warnings] along the full length of the public use area of the platform.

36 C.F.R. § Part 1191, App. D, at 810.5.2. Plaintiffs do not claim that the MTA's system lacks detectable warnings on platform edges, only that it does not have platform guards. Plaintiffs do not point to any other regulation by the DOT or anything else that requires that Defendants have platform guards to comply with the ADA. Therefore, the MTA's platforms are readily accessible for purposes of the ADA, because they comply with the DOT's regulation. *See Presmarita v. Metro-N. Comm. R.R. Co.*, No. 17 CV 1118 (KBF), 2017 WL 6542515, at *4 (S.D.N.Y. Dec. 21, 2017).

Plaintiffs appear to argue, incorrectly, that there is a general right under the ADA to "equal access" to the subway system. (Pl. Mem. at 9.) Title II of the ADA (which applies to public entities) does not impose a statutory duty of reasonable modification or accommodation. *Compare* 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A) (for public accommodations under Title III, discrimination includes not making reasonable modifications) *with* 42 U.S.C. §§ 12131-12165 (Title II, containing no such requirement). Although Department of Justice ("DOJ") regulations issued under Title II, Part A have required reasonable modifications to facilities providing non-transit public services, *see* 28 C.F.R. §35.130(b)(7), those regulations do not apply to public transportation facilities, which are governed by the DOT regulations of Part B. *See, e.g.*, *Cruz v. MTA Long Island Bus*, 10-CV-1862, 2010 WL 9933403, at *7 (E.D.N.Y. May 25, 2010) (because the DOJ regulations do not apply, "a [public transportation] entity

therefore is not required to make reasonable modifications to its transportation services . . ."); *Levine v. Amtrak*, 80 F. Supp. 3d 29, 37-38 (D.D.C. 2015); 49 C.F.R. § 37.5(i)(3) (creating a duty of reasonable modification in the context of public transportation, but limiting that duty to "policies, practices or procedures," and not including a duty to modify infrastructure).

*Scharff v. County of Nassau*, cited by Plaintiffs, has no application to this case. The basic issue in that case was whether pedestrian crossing signals were an ADA-covered facility in the first place. No. 10 CV 4208 (DRH) (AKT), 2014 WL 2454639, at *12 (E.D.N.Y. June 2, 2014). Moreover, *Scharff* case involved the obligation of a County – not a transportation facility – to make reasonable accommodations, and therefore Part A (requiring reasonable modifications), rather than Part B (not requiring modifications), of Title II applied. Pedestrian crossing signals are not within the definition of a public transportation facility. Similarly, *Brown v. County of Nassau*, involving a claim that the county was required to retrofit Nassau Coliseum to make it accessible, also does not apply because it is a case under Part A (non-transportation facilities), not Part B (transportation facilities). 736 F. Supp. 2d 602 (E.D.N.Y. 2010).

**B. Plaintiffs' Disparate Impact Argument Is Inapplicable Here**

Plaintiffs appear to be arguing that since the transit system generally is more dangerous for visually impaired than non-visually impaired riders, the MTA's allegedly unreasonably unsafe platforms disparately impact the visually impaired. Under this theory, any type of alleged negligence that can be said to create greater risks for persons with disabilities than for persons without disabilities – as virtually every conceivable negligent act does – would support a claim under the ADA. This would be an unprecedented, and inappropriate, extension of common law liability for negligence into the ADA and federal courts. The DOT regulations define the scope of a transportation provider's obligations to be in compliance with the ADA. Plaintiffs'

argument is not with MTA – it is with the DOT, which determined what transportation providers must do to comply with the ADA.

Because Plaintiffs cannot make out an ADA claim, there is no federal claim left in this case, the Court should decline to exercise supplemental jurisdiction and dismiss the entire case.

## III. THIS CASE IS NOT SUBJECT TO FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

As explained in detail in Defendants' opening memorandum of law, CAFA does not confer diversity jurisdiction in this case because several exceptions to CAFA jurisdiction apply. The lack of CAFA jurisdiction over the class allegations is another wholly sufficient reason for the Court to dismiss this case for want of federal jurisdiction.

Plaintiffs argue that none of the exceptions to CAFA applies because "fewer than one-third of the Members of the Classes are residents of New York." (Pl. Mem. at 23.) To get to this result, Plaintiffs make multiple unlikely leaps of logic. They assume that most or all tourists to New York City are from outside the state, ride on public transportation, and will be able to be identified to become members of this class. Moreover, Plaintiffs' assertion that the class is mostly tourists flies in the face of the class allegations in their Amended Complaint, which defined the class as "[a]ll persons or entities *in New York* who paid to use the Transit System in New York during the applicable limitations period . . ." – not all visitors or tourists who have used the subway system. (Am. Compl. ¶ 87 (emphasis added).) They also confuse the definition of the visually impaired subclass, which they now claim includes people who did not even use the subway system while visiting New York and instead took taxis because the system is allegedly so hostile to the visually-impaired. (Pl. Mem. at 25.) Not only is this constantly-shifting class definition improper, but these supposed class members will be impossible to identify and notify. Moreover, because the ADA claim must be dismissed, as discussed above,

Plaintiffs proceed under a negligence theory. People who do not ride the subway have no claim for negligence caused to them by being on an unsafe subway platform, because they do not use subway platforms. If they have not used the subway, they cannot be part of the visually-impaired subclass.

Finally, even assuming that Plaintiffs could make out a sufficiently diverse class to obtain CAFA jurisdiction, because the proposed class could never be certified under FRCP Rule 23, CAFA jurisdiction may not even be invoked here. *See* Point III of Defendant's opening brief.

## IV. PLAINTIFFS' NEGLIGENCE CLAIMS ARE INAPPROPRIATE FOR A CLASS ACTION

As discussed in Defendants' initial memorandum, the courts frown upon negligence claims being brought as class action cases, and for good reason. (Def. Mem. at 22-24.) Nevertheless, Plaintiffs continue to try to conjure this negligence case into a class action. *See, e.g.* Pl. Mem. at p. 1 ("Defendants' train platforms are unreasonably unsafe;" "Defendants' negligence causes needless carnage," "Defendants' negligence is felt most acutely by the most vulnerable."). This is simply a negligence case, and is inappropriate for treatment as a class action.

Additionally, Plaintiffs cite outdated case law for the proposition that MTA is liable for injuries for overcrowding on the subways. *See* Pl. Mem. at 4 (citing *Dalton v. New York*, 283 A.D. 1104, 1105 (2d Dep't 1954) and *McGearty v. Manhattan R. Co.*, 15 A.D. 2, 4 (2d Dep't 1897)). The current state of the law is that

> [a] subway company is not negligent merely because it permits crowds to gather on its platform. Before proof of negligence in this regard may be said to exist, it must be shown that the crowd was so large and unmanaged that a user of the platform was restricted in his free movements or was unable to find a safe standing place, and that as a result of either of those conditions an injury was sustained.

*Garcia v. New York City Transit Auth.*, 114 A.D.3d 720, 721-722 (2d Dep't 2014). Plaintiff Mariani, who claims she was injured on an overcrowded platform, does not make out a cause of action under this standard. (Am. Compl. ¶ 68.) Nor is the mere existence of a gap between the train and the platform sufficient to state a cause of action:

> The existence of a gap between a train and a platform, necessary to the operation of the train because the cars must not scrape the platform and must be far enough away to allow for the oscillation and swaying of the train, is insufficient, in and of itself, to establish defendant's negligence.

*Howell v. New York City Tr. Auth.*, 123 A.D. 439, 439-40 (1st Dep't 2014); *compare* Plaintiff West's allegations in Am. Compl. ¶ 59 (alleging merely that West stepped into a gap while attempting to board a train). Thus, under New York law, neither Mariani nor West can make out a claim for negligence against NYCTA or LIRR. Moreover, it is clear that negligence cases involving overcrowding or platform gaps are innately fact specific, and are not suitable for class treatment.

Finally, Plaintiffs claim that Defendants owe some special duty to disabled passengers because they issue reduced-fare MetroCards to disabled passengers. They make this claim without citation or legal authority, and indeed, there is no such special duty.

Because of the fact-specific nature of each alleged injury, the proposed class members' negligence claims are not appropriate for class certification.

## V. THE GOVERNMENTAL IMMUNITY DOCTRINE DOES APPLY

Plaintiffs argue that Defendants "are municipal corporations, not government entities, and may not avail themselves of the doctrine of governmental immunity in this case." (Pl. Mem. at 13.) This is a distinction without a difference. Defendants are public benefit corporations, N.Y. P.A.L. §§ 1201, 1263; *see also* Gen. Const. Law § 66(4), establishing as a "governmental function" the building and operating of the public transportation system in the New York City

metropolitan region. N.Y. P.A.L. §§ 1202; 1264(2); *see also Lerner v. Casey*, 2 N.Y.2d 355, 367 (1957) ("... for this city, the operation of the rapid transit facilities is a basic governmental service indispensable to the conduct of all other governmental as well as private activities necessary for the public welfare . . .").

In arguing that this case is justiciable, Plaintiffs cite *Klostermann v. Cuomo*, 61 N.Y.2d 525 (1984). The *Klostermann* court, however, noted that "[t]he paramount concern is that the judiciary not undertake tasks that the other branches are better suited to perform," including "allocat[ing] scarce resources". *Id.* at 535. "Generally, the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the legislative and executive branches of our tripartite system." *Id.* at 535-36. Here, Plaintiffs are seeking to embroil the courts in the management of the MTA and how it should design its system and spend its limited resources. This is the precisely where the governmental immunity doctrine applies. Moreover, the application of the governmental immunity doctrine has absolutely nothing to do with a cost-benefit analysis. Instead the courts recognize that it is up to the legislative and executive branches to decide whether, how and where to spend the public's money. (*See* Pl. Mem. at 15 ("the cost of the required relief is negligible, so there is no cost-benefit calculation that could justify Defendants' actions"). *See, e.g.*, *Weiner v. Metro. Transp. Auth.*, 55 N.Y.2d 175, 182 (1982).

Plaintiffs also claim repeatedly (Pl. Mem. at p. 2, 3, 5) in their opposition brief that it was negligence for Defendants to not install platform barriers, because they could be installed for little or no money, citing a New York Daily News article from December 2012 (Am. Compl. p. 22 fn. 30). This article states that in 2007, a company "wanted to install safety doors on subway platforms" in exchange for "keep[ing] all the revenue from advertising on the high-tech portals,"

but that MTA rejected that proposal. Plaintiffs claim that this article proves that MTA had the opportunity to install barriers for free, and that "[d]ue to their low cost, it is unreasonable for defendants not to install safety barriers." (Pl. Mem. at 5.) However, the article proves the opposite: it describes how, because of the age of the subway system, "additional doors could not be fully automated in most stations. Instead, a conductor would have to manually activate them." This, the article says, would be a problem with the train conductors' union. Moreover, the article continues, the MTA has been considering platform doors for many years, but "the plan wasn't seriously considered because it would have required major renovations to all lines," according to former NYCTA President Lawrence Reuter. Mr. Reuter is quoted in the article as having discouraged the plan because "it's a *cost item* and it's a maintenance item." http://www.nydailynews.com/new-york/claim-mta-botched-safety-deal-article-1.1230482, (emphasis added). This article only proves the non-justiciable nature of the relief Plaintiffs seek.

Because Defendants comply with the ADA, the only remaining claim is for negligence. (Pl. Mem. at 15.) As the New York State Court of Appeals has stated, "[t]he lawful acts of executive branch officials, performed in satisfaction of responsibilities conferred by law, involve questions of judgment, allocation of resources and ordering of priorities, which are generally not subject to judicial review." *N.Y. State Inspection, Sec. and Law Enf't Emps., v. Cuomo*, 64 N.Y.2d 233, 239 (1984); *see also Abrams v. N.Y. C. Transit Auth.*, 39 N.Y.2d 990 (1976).

Finally, Plaintiffs' claim that, because Defendants issue reduced-fare MetroCards to individuals with disabilities, the cards "act as a false affirmation that Defendants operate a transit system that is safe for the recipient" is without citation or merit.

## VI. PLAINTIFFS' NEW YORK CITY HUMAN RIGHTS LAW CLAIMS ARE PREEMPTED BY STATE LAW

As a preliminary matter, Plaintiffs' opposition does not address the impact of the New York Public Authorities Law on their NYCHRL claims. The MTA, NYCTA, and their subsidiaries are specifically exempted from the requirements of any municipal law which pertain to their "facilities," as Plaintiffs' claim undoubtedly does. *See* N.Y. P.A.L. § 1266(8); Opening Br. at 17-18.

Nor do Plaintiffs offer any meaningful opposition to our other pre-emption arguments. First, Plaintiffs mischaracterize Defendants' field pre-emption argument as pertaining to "the field of antidiscrimination." (Pl. Mem. at 17-18 (citing *N.Y. State Club Ass'n v. City of New York*, 69 N.Y.2d 211, 219 (1987)).) Not so. Defendants argue only that the State has expressed a clear intent to occupy the much smaller field of required modifications to transit facilities. N.Y. Exec. Law § 296(e). It is appropriate and logical for the State to have exclusive and uniform control over public transit. *See, e.g.*, *Mangano v. Silver*, 107 A.D.3d 956, 959 (2d Dep't 2013) (describing public transit in the New York City metropolitan region as "a matter of public interest, affecting not only the people of that city, but the whole state").

In addition, Plaintiffs strain to explain why the State and City laws are not in conflict. In fact, the cases cited by Plaintiffs point directly to the existence of conflict pre-emption here, where "the State specifically permits the conduct prohibited at the local level." (Pl. Mem. at 17 (citing *Patrolmen's Benevolent Ass'n v. City of New York*, 142 A.D.3d 53, 62 (1st Dep't 2016).) It is black-letter law that a conflict exists where "a right or benefit is expressly given by State law which has then been curtailed or taken away by the local law." *Id*. at 62 (quotation marks, ellipses and citation omitted). State law specifically permits "public transportation facilities" to comply with anti-discrimination laws while refraining from modifying physical facilities. N.Y.

Exec. Law § 296(2)(e). Plaintiffs' urged interpretation of the NYCHRL would prohibit conduct specifically permitted by the state, and remove a benefit expressly given by state law.

Finally, it is simply not credible to argue, as Plaintiffs do here, that the NYCHRL is generally applicable law with only a tangential impact on the State's interests. The State's interest in the New York City metropolitan area's public transit system is paramount. *See* Mangano, 107 A.D.3d at 959. Plaintiffs freely admit that they seek retrofitting of all subway and LIRR platforms with platform screen doors, a massive undertaking which would interfere in myriad ways with the State's interest in preserving the agencies' ability to balance disability access and providing a functional transit system using scarce funds.

**CONCLUSION**

For the reasons stated above, as well as those presented in their moving papers, Defendants respectfully request that this Court dismiss all claims alleged in the Amended Complaint, and that the Court grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
October 15, 2018

By: ______________________

Ira J. Lipton (IL-4835)
Helene R. Hechtkopf (HH-7402)
Steven Silverberg (SS-5064)
Julian Brod (JB-8269)
Miriam J. Manber (MM-0263)
HOGUET NEWMAN REGAL & KENNEY, LLP
60 East 42nd Street, 48th Floor
New York, NY 10165
Phone: 212-689-8808

*Attorneys for Defendants Metropolitan Transportation Authority, New York City Transit Authority, and Long Island Rail Road Company d/b/a MTA Long Island Rail Road Company*